

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00067-CV

---

Local Chapter, LLC, Appellant

v.

John William Weinacht, Appellee

---

On Appeal from the 394th District Court
Presidio County, Texas
Trial Court No. 8240

---

## MEMORANDUM OPINION

The underlying lawsuit involves a dispute between Local Chapter, LLC (Local Chapter) and John William Weinacht (Weinacht) over title to a two-acre tract of land in Presidio County, Texas (contested tract). The parties filed cross-motions for both no-evidence and traditional summary judgment. Following a hearing on the motions, the trial court granted Weinacht's motion and denied Local Chapter's motion. In several issues on appeal, Local Chapter asserts the trial court erred by (1) failing to rule on or implicitly denying certain motions filed by Local Chapter prior to entry of the summary judgment, (2) granting Weinacht's summary judgment motion and

denying Local Chapter's summary judgment motion, and (3) not granting Local Chapter's post-judgment motion for new trial and to modify the summary judgment. We affirm.

# I. FACTUAL BACKGROUND[1]

Local Chapter is a family-owned entity created by Baxter and Amber Box for the purpose of passing land down to their children. Local Chapter claims ownership of approximately 474 acres in Redford, Texas (Large Tract)[2] and an adjoining 1.7 acres (Small Tract). Local Chapter claims title to the Large Tract by virtue of a Warranty Deed with Vendor's Lien dated October 9, 2019. Local Chapter claims title to the Small Tract by virtue of a General Warranty Deed dated July 8, 2020. Local Chapter contends the contested tract lies within the Large Tract and the Small Tract. Weinacht claims title to the contested tract by virtue of a General Warranty Deed dated May 18, 2005, and a Correction Deed dated December 6, 2006, that corrected the acreage in the 2005 Warranty Deed.

## A. Local Chapter's claim to ownership

In its motion for summary judgment, Local Chapter asserted it could trace its chain-of-title to the contested tract, allegedly located on portions of what it refers to as the Small Tract and the Large Tract, through a regular chain of conveyances from the State of Texas to Local Chapter.

In 1905, F.J. Alvarado submitted a school land application to the State and was awarded the Large Tract. F.J. Alvarado transferred his interest in the Large Tract to his son, C.J. Alvarado, through a Warranty Deed in 1937. C.J. Alvarado subsequently conveyed the Large Tract to W.A. Glasscock in 1943. In 1947, Glasscock executed and delivered a Deed of Trust to a Trustee for

---

[1] Additional background will be discussed in connection with the specific issues raised.

[2] The total acreage of the Large Tract claimed by Local Chapter is described as 474 acres, 480 acres, and 482.50 acres. According to Local Chapter, these discrepancies result mainly from the intervening conveyance of a portion of the original tract. For ease of reference, this opinion will refer to this acreage as the Large Tract.

the benefit of George Pugh, securing repayment of a promissory note from Glasscock to Pugh (Pugh Deed of Trust). In 1949, Glasscock transferred a portion of the property—including the contested tract—to Trinidad Grado Sr. (Grado Sr.)

Glasscock defaulted on the promissory note, prompting Pugh to sue several defendants, including Grado Sr., requesting judicial foreclosure on the Pugh Deed of Trust in the district court of Presidio County, Texas, in 1954. The district court concluded that Pugh's deed of trust lien was superior to any claim of the defendants and subject to foreclosure. After the court clerk issued an order of sale, the Presidio County Sheriff executed a deed conveying all ownership interest in the 480 acres to Pugh.

In 1959, Pugh conveyed all the acreage to J.T. Paulsel. After Paulsel died, the Large Tract was left to separate testamentary trusts (the Trusts) for Paulsel's wife and daughters (collectively, Paulsel's Survivors). By a Trustee's Quitclaim Deed in 2010, the Trusts' trustees conveyed undivided interests in the Large Tract to Paulsel's Survivors. By a Warranty Deed with Vendor's Lien dated October 9, 2019, Local Chapter purchased the ownership interests in the Large Tract from Paulsel's Survivors. The deed contains the following clause:

> Exceptions to Conveyance and Warranty:
>
> Subject to any unrecorded or prescriptive easement, either public or private, which exists or may be later claimed as existing for construction, maintenance, repair, and/or replacement of the electrical line crossing the Property, as shown on the Plat attached hereto as Exhibit "A".
>
> Subject to any adverse right, claim or interest of third parties based on the Deeds recorded in Volume 339, Page 166, Volume 358, Page 158, and Volume 356, Page 133, Official Public Records of Presidio County, Texas.

On June 5, 1907, the State of Texas granted a patent to 80 acres of land to Samuel J. Hensley. In 2020, through a series of deeds, Local Chapter eventually purchased the Small Tract, which adjoins the Large Tract.

3

**B. Weinacht's claim to ownership**

Weinacht's claim of ownership has its origin in the death of a young man named Juni Hernandez, who was killed on May 20, 1997, by a U.S. Marine who was part of a four-member team on border enforcement duty. Juni was on the contested tract when he was shot and died. The Hernandez family has a tract of land near the contested tract. After the shooting, Trinidad Grado Jr. (Grado Jr.) claimed ownership of six acres, which included the contested tract, under a warranty deed dated January 9, 1980. The deed conveyed six acres from the Estates of Trinidad Grado Sr. and Fernanda Grado, through their heirs, to their son, Grado Jr. Grado Jr. told Weinacht and Margarito Hernandez (Juni's brother) that the Grado family had possessed the property for over 40 years.

The Hernandez family hired Weinacht to pursue a claim against the government. According to Weinacht, ownership of the contested tract was important to the Hernandez family's claim against the government because the claim was predicated on the contention that the Marines did not have permission or authority to be at the location where they shot at Juni or where he was killed. Weinacht confirmed Grado Jr. had been paying taxes on the six-acre tract. He also searched the real property records and found the 1954 foreclosure deed, a 1960 survey of the land made for Grado Sr. and Grado Jr.'s January 9, 1980 deed. Weinacht concluded the 1980 deed, Grado Jr.'s possession of the six-acre tract, and his paying taxes "wiped out any claim of ownership that anyone else could make to the property and established a limitations title in" Grado Jr.

Grado Jr. gave the Hernandez family permission to erect a wooden cross where Juni died on the contested tract. The cross remained on the property until April or May 2005 when Grado Jr. demanded that the cross be taken down or he be paid rent for it. After the removal of the cross,

Weinacht and the Hernandez family decided it would be best for Weinacht to contact Grado Jr. and attempt to buy the six-acre tract. Weinacht purchased the tract on May 18, 2005. Weinacht informed the Hernandez family that he had purchased the land and told them to put the cross back up. The family erected a new steel cross and cemented it into the ground where it has remained for over 18 years as a permanent memorial to Juni.

Sometime after May 2005, Weinacht learned that Grado Jr. had previously deeded four of the six acres to his daughters. Weinacht had the property resurveyed and confirmed the cross and location of where Juni died was within the remaining two acres. Despite being upset because he believed he had purchased all six acres, Weinacht accepted a corrected deed from Grado Jr., executed on December 6, 2006, but effective on May 18, 2005, to show Weinacht's purchase of the remaining two acres. Local Chapter agreed that the "Exceptions to Conveyance and Warranty" language in its October 9, 2019 Warranty Deed with Vendor's Lien that identified a deed "recorded in . . . Volume 358, Page 158" refers to the December 6, 2006 deed from Grado Jr. to Weinacht.

## II. PROCEDURAL BACKGROUND

After Local Chapter purchased the Large Tract, it contacted Weinacht about purchasing the contested tract he claimed to own. Weinacht refused to sell. On August 21, 2023, Local Chapter filed suit asserting causes of action for trespass to try title to determine it had fee simple title to the contested tract and quiet title by invalidating the cloud of title resulting from Weinacht's deeds. On October 2, 2023, Weinacht filed an answer and counterpetition, raising counterclaims for trespass to try title (1) asserting Local Chapter's claims were barred by the statute of limitations and Weinacht was entitled to the property based on adverse possession, and (2) to quiet title by invalidating the cloud of title resulting from Local Chapter's deed.

5

Both parties filed motions for traditional and no-evidence summary judgment on September 16, 2024. On November 18, 2024, Local Chapter filed a motion to continue the hearing on the motions from November 19th to December 3, 2024. The motion to continue was not granted and, on November 19th, the trial court held a summary judgment hearing. Following the hearing, Local Chapter filed a motion to supplement the record. On November 26th, the court signed a final summary judgment order, without stating its grounds, that granted Weinacht's motion and denied Local Chapter's motion. The judgment determined Weinacht held title to the contested tract. Local Chapter filed two post-judgment motions: a motion to modify the summary judgment and a motion for new trial, which were either not ruled on or overruled by operation of law. This appeal by Local Chapter followed.

## III. MOTION TO CONTINUE SUMMARY JUDGMENT HEARING

In its first issue, Local Chapter asserts the trial court's refusal to continue the summary judgment hearing constituted reversible error because Local Chapter did not receive notice of the hearing required by the Texas Rules of Civil Procedure.

### A. Background

Both parties filed their summary judgment motions on September 16, 2024. On October 16, 2024, the parties appeared before the trial court stating they had a mediation scheduled for November 18th, but they wanted dates set for a hearing on the competing motions for summary judgment and for trial.[3] The following conversation ensued:

Court:     Sure. I think that's usually the purpose of a court case. However, I want you to mediate. I want you to mediate before we do anything else because you might settle everything. If you don't settle everything, then we will set it [the summary judgment hearing] for, what is November the 19th [at 10:00 a.m.]? You think it'll be more than a one day mediation?

---

[3] Local Chapter was represented by counsel, Robert Soza, and Weinacht, an attorney, represented himself.

| Soza: | No, Your Honor. |
|---|---|
| Weinacht: | No, sir. |
| Court: | All right. Then why don't we set it for a hearing on the 19th, that is a Tuesday. If you don't reach anything in mediation, we'll set it for your summary judgment hearings on the 19th, and if the summary judgments don't fly, then we will do a scheduling order and get it set for trial. |
| Weinacht: | Thank you, Your Honor. |
| Court: | Anything else? |
| Soza: | Not on my end, Your Honor. |
| Weinacht: | No, Your Honor. |

On October 16th, the court administrator sent Soza and Weinacht a Google calendar invitation for a November 19th hearing on the motions for summary judgment. Soza acknowledged he received the invitation in his email "trash folder." On October 23rd, Soza emailed the mediator, stating, "Both parties have filed Motions for Summary Judgment— Judge Wright has delayed setting these for hearing until after the 18th of November. These Motions contain everything [the mediator] needs to understand the two parties' positions, and I attach a link below to the Motions and all of their attachments."

On November 12th, Weinacht filed a response to Local Chapter's summary judgment motion. The summary judgment hearing was scheduled to commence at 10:00 a.m. on November 19th. At approximately 9:30 p.m. on November 18th, Local Chapter filed an emergency motion for continuance asking that the hearing be reset to December 3, 2024, or alternatively, that Local Chapter be allowed to file a late response to Weinacht's motion for summary judgment.[4] The appellate record does not indicate the trial court granted a continuance,

---

[4] Soza attached his affidavit to the motion. He explained he received the court administrator's email on October 16th, and his records indicated that on that same day, he deleted the calendaring item, although he had no memory of doing so. He stated his failure to calendar a deadline to file a response to Weinacht's motion for summary judgment "was not due to conscious indifference" on his part but was due to his reliance on the receipt of a trial court order setting a hearing and his reliance on other members of his law firm (none of whom received the email) calendaring the deadlines to respond to a motion for summary judgment. Although Soza's affidavit provided a basis for the trial court to allow him to file a late response, he did not provide sufficient cause to continue the hearing date. *See* Tex. R.

and the summary judgment hearing commenced on November 19th. During the summary judgment hearing, Local Chapter did not inform the trial court that it had filed a motion requesting a continuance of the hearing, or alternatively, the opportunity to late-file a response to Weinacht's motion for summary judgment nor did it object to proceeding with the hearing.

On November 26th, the trial court signed an order granting Local Chapter's request to file a late response to Weinacht's motion. The record on appeal does not contain any response from Local Chapter. Also on November 26th, the trial court signed a final summary judgment, granting Weinacht's motion for summary judgment. The summary judgment order states that the trial court heard both motions and considered the summary judgment evidence and the arguments of counsel.

### B.   Analysis

The current version of Rule 166a, effective March 1, 2026, requires the clerk to serve notice. Tex. R. Civ. P. 166a(c) ("The clerk must send notice to the parties of the submission or hearing date."). The version of Rule 166a in effect at the time of this 2024 litigation contemplated service of notice, but stated as follows:

> Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

Tex. R. Civ. P. 166a(c).

The date of the hearing determines the time for a response to the motion, and without notice of the hearing, the adverse party cannot know when its response is due. *Martin v. Martin,*

---

Civ. P. 251 ("No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law.").

*Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998). "[I]f a party receives notice that is untimely, but sufficient to enable the party to attend the summary judgment hearing, the party must file a motion for continuance and/or raise the complaint of late notice in writing, supported by affidavit evidence, and raise the issue before the trial court during the summary judgment hearing." *Fertic v. Spencer*, 247 S.W.3d 242, 247 (Tex. App.—El Paso 2007, pet. denied); *see also In re Est. of Snow*, No. 12-11-00055-CV, 2012 WL 3793273, at *2 (Tex. App.—Tyler Aug. 30, 2012, no pet.) (mem. op.) (holding same). The appellant must show that lack of sufficient notice in a summary judgment proceeding caused it harm. *Snow*, 2012 WL 3793273, at *2; *see Martin*, 989 S.W.2d at 359 (stating notice of a hearing on a summary judgment motion is required but not jurisdictional and holding trial court's error in granting a summary judgment motion without notice of the hearing was harmless).

"As a prerequisite to complaining on appeal about the denial of a motion, [] the record must show that the motion was brought to the trial court's attention and that the trial court either denied the motion or refused to rule on the motion and the complaining party objected to the refusal." *Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 449 (Tex. App.—Dallas 2011, no pet.).[5] "The mere act of filing a motion is not sufficient to show that the movant brought the

---

[5] In *Quintana*, the trial court set a hearing on appellees' motion for summary judgment for the same date as the trial setting. Six days before the hearing date, Quintana filed a motion for continuance of the trial setting asking the court for additional time in which to conduct further discovery. In the last paragraph of her motion, she also asked the court to reschedule the hearing on appellees' motion for summary judgment. 347 S.W.3d at 448. The record showed that when the trial court called the case, the court said, "First thing I've got in front of me is [the appellees'] Motion for Summary Judgment." *Id.* at 349. The court asked the appellees if they wanted to be heard on their motion, they said they did, and they began arguing the motion. Quintana did not object or otherwise bring to the trial court's attention that she had filed a motion for continuance and a motion for leave to file a second amended petition. *Id.* Instead, she responded to appellees' arguments on the motion for summary judgment. Consequently, the record did not show Quintana had called her motions to the attention of the trial court, and there was no ruling on the motions in the record. But even if the trial court refused to rule on the motions, which was not reflected in the record, there was nothing in the record to show that Quintana objected to the refusal. Consequently, the court concluded Quintana did not preserve her issues for review. *Id.*

motion to the trial court's attention or requested a ruling." *Jones-Hospod v. Hospod*, 676 S.W.3d 709, 719 (Tex. App.—El Paso 2023, no pet.).

The record reflects that Local Chapter appeared at the summary judgment hearing held November 19th. Thus, Local Chapter received sufficient notice to enable it to attend the summary judgment hearing. Although Local Chapter filed a motion for continuance the evening before the hearing began, its counsel did not announce he was not ready to proceed with the hearing because he needed additional time in which to file a response to Weinacht's motion for summary judgment. Instead, Local Chapter proceeded with the hearing, responded to Weinacht's arguments, and nothing in the record shows that it brought its motion for continuance to the trial court's attention or asked the trial court to consider its motion and issue a ruling. For these reasons, Local Chapter failed to preserve error on its complaint that the trial court erred by not continuing the summary judgment hearing.

Even if Local Chapter preserved its complaint that the trial court erred by not continuing the hearing, we conclude it was not harmed. First, we note that Local Chapter requested relief in the alternative—a continuance of the summary judgment hearing or leave to file a late response to Weinacht's motion for summary judgment. The trial court granted the alternative relief and allowed Local Chapter to late-file a response.

Second, both parties filed their summary judgment motions on September 16th. Local Chapter contends it was harmed because the trial court granted the motion for leave on November 26th, the same day it granted Weinacht's motion for summary judgment and denied Local Chapter's motion. Local Chapter contends its four-page response[6] to "Weinacht's 582-page motion in less than twelve hours," did not include all of Local Chapter's responses to the

---

[6] On appeal, Local Chapter contends it attached as an exhibit to its motion for continuance a four-page response to Weinacht's motion for summary judgment. That four-page response is not contained in the appellate record.

10

arguments raised in Weinacht's motion. In fact, Weinacht's motion was 41 pages long, including the signature page. Fifty-four exhibits were attached to the motion. Local Chapter's motion was 30 pages long, including the signature page. Forty-eight exhibits were attached to its motion. The competing motions mirrored each other with both parties disputing the validity of the other's claim to title. Weinacht claimed he had limitations title in his own right under the five- and ten-year statutes, and by tacking to the previous owner's (Grado Jr.) 1980 deed, he had limitations title via the twenty-five-year statute. Local Chapter challenged that argument. During the hearing, counsel for both parties fully and competently addressed and countered all the arguments raised in the competing motions.

For these reasons, we overrule Local Chapter's first issue.

## IV. MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD

In its second issue, Local Chapter raises two alternative arguments. First, it contends the trial court affirmatively granted it leave to supplement the record with two exhibits that were attached to its motion to supplement, and that this court should consider the two exhibits in our review of the summary judgment. Alternatively, Local Chapter asserts the trial court abused its discretion by failing to rule on or implicitly denying its written motion for leave to supplement.

### A. Background

During the summary judgment hearing, in support of its argument that it held valid title to the contested tract, Local Chapter relied on a patent (or deed) that evidenced a grant of land from the State of Texas to F.J. Alvarado. The patent, dated January 23, 1959, referenced a 1905 application filed by F.J. Alvarado, which stated, "Bought and fully paid for on the application of F.J. Alvarado filed in the General Land Office December 7, 1905 under the laws regulating the sale of Public Free School land." Local Chapter contended that although F.J. Alvarado did not

11

receive the patent until 1959, he actually purchased the land on December 7, 1905, and the purchase was recorded in the General Land Office. Weinacht countered that, although F.J. Alvardo bought the land in 1905, he did not obtain ownership of the land until he received the 1959 patent. At the end of the hearing, Local Chapter asked permission to obtain what it referred to as an ancient document.[7] The trial court gave Local Chapter until the Friday after the Tuesday hearing to obtain the document and place it in the record and stated it would withhold its ruling until that time.

On November 22nd, Local Chapter filed a motion requesting leave to supplement the summary judgment record with (1) Exhibit A, a brief in support of its motion for summary judgment,[8] attached to which were 37 exhibits, and (2) Exhibit B, the so-called ancient document. Local Chapter filed a proposed order in which the trial court "granted leave to supplement the summary judgment record with Exhibit A and Exhibit B to [Local Chapter's] Motion[.]" Weinacht filed a response objecting to the exhibits. The record on appeal does not contain a ruling on the objections. On December 2nd, the court administrator emailed the parties, stating, "Mr. Soza, Judge Wright has granted you leave to supplement the Summary Judgment record. The order has been signed and I'm getting it filed this morning along with the Summary Judgment." Although the email indicates an order was signed, the record on appeal does not contain a signed order and Local Chapter did not request that the appellate record be supplemented. *See* Tex. R. App. P. 34.5(c)(1) ("If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted

---

[7] The "ancient document" was the 1905 application to purchase 482 acres of land.

[8] Local Chapter stated the purpose of the brief was to address Weinacht's evidentiary objections and the legal effect of F.J. Alvarado's 1905 school land application and the accompanying 1959 patent issued by the State of Texas.

item."). On appeal, Weinacht contends that we must presume the trial court did not consider the two exhibits because there is no written order granting the motion to supplement.

### B. Analysis

The granting or denial of a motion to supplement a record is within the trial court's sound discretion. *See Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet. denied). If nothing appears in the record to indicate that late filing of a summary judgment response or evidence was with leave of court, then we presume the trial court did not consider the response or evidence. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). When we consider whether a trial court granted leave, we examine the record for "an affirmative indication that the trial court permitted the late filing." *Id*. "That indication may arise from 'a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing.'" *Id.* at 259–60; *see also TAC Total Automation Controls, Inc. v. MSC Indus. Supply*, No. 08-24-00150-CV, 2025 WL 2918845, at \*9 (Tex. App.—El Paso Oct. 14, 2025, no pet.) (mem. op.) (same).

Here, the reporter's record from the summary judgment hearing affirmatively indicates the trial court verbally granted leave to supplement the summary judgment record with the so-called ancient document. Furthermore, the summary judgment order states the trial court considered "the summary judgment evidence." *See B.C.*, 598 S.W.3d at 262 ("while we presume that a trial court did not consider a late-filed response absent an affirmative indication in the record, a recital in a summary-judgment order that the trial court considered 'the evidence' without qualification or limitation overcomes that presumption"). Therefore, we will consider the ancient document in our review of the trial court's summary judgment order.[9]

---

[9] On appeal, Weinacht contends the trial court did not invite Local Chapter to submit material that violates the rules of evidence. Weinacht did not raise any objection to Local Chapter's request during the hearing or to the trial court's

13

However, the trial court did not grant leave to supplement the record with Exhibit A, the brief and its 37 exhibits. The sole basis on which Local Chapter claims error is its contention that the trial court's failure to rule on its written motion to supplement was an abuse of discretion because the court's comments during the summary judgment hearing and the court administrator's email indicated that the court had granted leave to file. We disagree with Local Chapter's interpretation of the trial court's verbal ruling and the court administrator's email.

During the hearing, Local Chapter's attorney stated, "It's -- we're not taking deposition, we're just pulling an ancient document and putting it in the record. That's all." The court ruled as follows: "Okay. This is what I'll do for you. I'll withhold my ruling until you get that document and put it in the record. And it's -- and I'll give you until Friday to do it. And then I'll make a ruling. And good luck, folks." The court was clearly allowing Local Chapter to file the ancient document, not additional briefing or exhibits. The court administrator's email refers to a written order, but there is no indication whether it was Local Chapter's proposed order or simply an order reflecting the verbal ruling. Because the record does not affirmatively indicate the trial court granted leave to supplement the summary judgment record with additional briefing and exhibits, Local Chapter has not demonstrated the trial court abused its discretion. For this reason, we

---

allowing it to file the ancient document. After Local Chapter filed its written motion to supplement, Weinacht filed a response objecting to the various exhibits attached to the brief (Exhibit A) and to the ancient document (Exhibit B). Weinacht objected to Exhibit B on hearsay and authenticity grounds because it was not certified. A hearsay objection is one of form and the objection is waived in the absence of a ruling. *See Cnty. of El Paso v. Baker*, 579 S.W.3d 686, 694 (Tex. App.—El Paso 2019, no pet.) (hearsay is objection to form); *Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (recognizing that if a party fails to obtain a ruling on an objection to the form of its opponent's summary judgment evidence, the issue is waived for appellate review, and the evidence remains part of the summary judgment proof); *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 225 (Tex. App.—El Paso 2002, no pet.) (issues relating to form defects in summary judgment evidence must be preserved by both an objection and ruling at the trial court level). Weinacht did not obtain a ruling on his hearsay objection; therefore, it is waived. On the other hand, absence of authentication is considered a defect of substance that may be raised for the first time on appeal. *In Est. of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.—El Paso 2015, pet. denied). On appeal, Weinacht merely mentions that he "objected to the Exhibit B file on the grounds of hearsay and lack of authentication, . . . and pointed out that the purported file lacks an official certification from a governmental agency." He does not otherwise argue this court should not consider the document.

overrule Local Chapter's second issue that the trial court erred by not granting leave to supplement the record with Exhibit A.

## V. SUMMARY JUDGMENT & POST-JUDGMENT MOTIONS

In its third issue, Local Chapter raises several complaints. It first asserts the trial court erred in granting Weinacht's motion for summary judgment and in denying Local Chapter's motion for summary judgment. It also asserts the trial court abused its discretion by denying its post-judgment motions for new trial and to modify the summary judgment.

### A. Summary judgment standard of review

A party may file a no-evidence motion for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(2). Once filed, the nonmovant has the burden to produce evidence raising a genuine issue of material fact on each of the challenged elements. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a necessary element is less than a scintilla and will not avoid a summary judgment. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

A party may move for traditional summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(1). When moving for summary judgment on the other party's claims, the movant must conclusively negate an element of the nonmovant's cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). The burden does not shift to the nonmovant to respond or produce evidence unless the movant meets its burden. *Draughon v. Johnson*, 631

S.W.3d 81, 87–88 (Tex. 2021). On cross-motions for traditional summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993).

We review summary judgments de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* When the trial court does not specify in its order the ground on which it granted summary judgment, we must affirm if the judgment is proper on any ground. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

When the trial court grants both a traditional and a no-evidence summary judgment, we ordinarily review the no-evidence grounds first. *Merriman*, 407 S.W.3d at 248. However, "we may address the traditional grounds for summary judgment first when they are dispositive." *Tippett v. Safeco Ins. Co. of Indiana*, No. 02-19-00152-CV, 2020 WL 827143, at *3 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.); *see also Schuetz v. Source One Mortg. Servs. Corp.*, No. 03-15-00522-CV, 2016 WL 4628048, at *2 (Tex. App.—Austin Sept. 1, 2016, no pet.) (mem. op.). ("in the interest of efficiency, we may review a summary judgment under the traditional standard of Rule 166a(c) first, if the application of that standard would be dispositive").

Local Chapter moved for a traditional summary judgment on its trespass to try title claim and its suit to quiet title, and on Weinacht's trespass to try title claim and adverse possession claim. Local Chapter also moved for a no-evidence summary judgment on these three claims. Weinacht moved for a no-evidence summary judgment on Local Chapter's trespass to try title and quiet title causes of action. Weinacht moved for a traditional summary judgment on his adverse possession claim. Because we conclude Weinacht's traditional summary judgment is

dispositive, we address only whether the trial court properly rendered summary judgment in Weinacht's favor on his adverse possession claim.

### B. Applicable law

To prevail on a claim of adverse possession, a claimant must establish, by a preponderance of the evidence (1) the actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) involves continuous cultivation, use, or enjoyment throughout the applicable statutory period. *Anderton v. Lane*, 439 S.W.3d 514, 517 (Tex. App.—El Paso 2014, pet. denied). Possession "must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *Flores v. Flores*, 225 S.W.3d 651, 655 (Tex. App.—El Paso 2006, pet. denied) (same); *see also* Tex. Civ. Prac. & Rem. Code § 16.021(1) (adverse possession is an "actual and visible appropriation of real property commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person").

Weinacht claimed adverse possession under three statutory periods: the five-year statute, the ten-year statute, and the 25-year statute. Under the five-year statute, a person must bring suit not later than "five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who: (1) cultivates, uses, or enjoys the property; (2) pays applicable taxes on the property; and (3) claims the property under a duly registered deed." Tex. Civ. Prac. & Rem. Code § 16.025(a). Under the ten-year statute, a person must bring suit not later than "10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *Id.*

§ 16.026(a). Under the twenty-five-year statute, a person, "regardless of whether the person is or has been under a legal disability, must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *Id.* § 16.027. "If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Id.* § 16.030(a). "To satisfy a limitations period, peaceable and adverse possession does not need to continue in the same person, but there must be privity of estate between each holder and his successor." *Id.* § 16.023.

### C.  Application

Although Weinacht argued he satisfied the requirements under all three statutory periods for adverse possession, we address only whether he satisfied the requirements under the ten-year statute. Weinacht claimed ownership of the contested tract under the May 18, 2005 Deed, which was recorded on May 23, 2005—almost 18 years before Local Chapter filed suit on August 21, 2023, and Weinacht filed his adverse possession suit on October 2, 2023. During his deposition, Baxter Box agreed that the "Exceptions to Conveyance and Warranty" language in his 2019 deed mentioned Weinacht's deed.

A cross for Juni has been on the contested tract since 2005 and annual memorials are held on the tract. Weinacht is listed in the property tax records as the owner of the contested tract and he has paid taxes on the contested tract since 2005. The tract on which Local Chapter pays property taxes has a separate account number and property I.D. In 2017, Weinacht received a Notice of Appraised Value for the contested tract showing an increase in ad valorum property taxes. He filed a protest and received a Notice of Protest Hearing at which he appeared by

18

affidavit. He reached a settlement with the appraisal district that reduced the appraised value of the land.

Weinacht goes to the property two or three times a year and his employees go to the property to work whenever they are needed. Weinacht has an employee who checks on the property from time to time and performs work on the property on a regular basis. Weinacht instructed the Hernandez family to patrol the land and report any activity to him, and they do so. The Hernandez family, with Weinacht's permission, visits the property regularly, including on Juni's birthday and the anniversary of his death, as well as throughout the year. According to the Hernandez family, Weinacht does not allow anyone to use the contested tract for any purpose other than as a memorial to Juni. The cross is visible from the County road and "a very long way off." The cross is also visible at night due to lighting installed by Weinacht.

In his affidavit, Weinacht stated that, on December 6, 2019, a representative of Local Chapter, Alfonso Nevarez, "followed up a conversation with [Weinacht] concerning ownership" of the contested track. Weinacht stated that, in the conversation giving rise to the email, Nevarez acknowledged the tract belonged to Weinacht and Local Chapter was interested in buying the land. After these conversations, Weinacht began to make improvements to the tract, including fencing, a septic tank, underground water and electrical lines, and restoring an adobe structure on the property—all of which was completed before the parties filed their respective lawsuits in 2023.

We conclude Weinacht conclusively established his entitlement to a traditional summary judgment on his adverse possession claim. He claimed possession of the contested tract and recorded his deed in 2005. For the next 18 years, his possession of the contested tract was adverse and hostile to Local Chapter's claim of record title; was open, notorious, peaceable, and exclusive;

19

and involved continuous cultivation, use, or enjoyment throughout the ten-year statutory period. *Anderton*, 439 S.W.3d at 517. The evidence also establishes that Weinacht's possession of the contested tract was "not only . . . actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes*, 802 S.W.2d at 645. The trial did not err in granting Weinacht's motion for summary judgment and denying Local Chapter's motion for summary judgment. *See Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 818 (Tex. App.—Texarkana 2004, pet. denied);[10] *Seager v. Fry*, 707 S.W.3d 452, 460, 469 (Tex. App.—Eastland 2025, no pet.).[11]

### D. Post-judgment motion for new trial

Local Chapter asserts that because the trial court erred in its prior rulings, it abused its discretion in not granting Local Chapter's motion for new trial, thus allowing the motion to be overruled by operation of law.

A trial court possesses broad discretion in ruling on a motion for new trial. *Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987); *Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 81 (Tex. App.—El Paso 2014, no pet.). Where a trial court fails to enter a written, signed order

---

[10] Freeman testified that his father dug a canal across the property and created an earthen pier in 1957; his family maintained Park A Lot on a regular basis, kept it mowed, and cut trees from the time the lake was created; he paid taxes on property shown to adjoin the lake; he had not allowed Cherokee onto the property; he had installed a water meter in 1994; Cherokee had never claimed Park A Lot, even during the other lawsuits. Other family members testified the family used the property by clearing it and having picnics and family outings there; had moved mobile homes onto the property and lived there; installed a septic tank and drilled a water well on the property and leaving them there; mowed weekly during the summers; and Cherokee was actually aware of the use. Additionally, Freeman introduced a "Garden Plot Lease" (dated 1990) that Cherokee had entered into with an adjoining landowner describing the location of the lease as "west of the Freeman's property in fee," a location was the property at issue. Cherokee never took physical possession of this piece of property until Cherokee brought the present suit. *Freeman*, 145 S.W.3d at 818.

[11] Fry's summary judgment evidence showed (1) he paid annual taxes due on the disputed strip since 1998, (2) he built a dam and tank on the disputed strip that was visible from Seager's adjoining property as well as the public road, (3) he constructed a 1900 square-foot residence on the disputed strip that was also visible from Seager's adjoining property as well as the public road, and (4) the disputed strip has been separated from Seager's adjoining property by a fence since at least 1955. *Seager*, 707 S.W.2d at 469.

on a motion for new trial, the motion is overruled by operation of law after 75 days. Tex. R. Civ. P. 329b(c). "When a motion for new trial is overruled by operation of law, as in this case, the question presented is whether the trial court abused its discretion by allowing the motion to be overruled." *Soto*, 458 S.W.3d at 81. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or it acts without reference to any guiding principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Soto*, 458 S.W.3d at 81.

Local Chapter did not request a hearing on its motion for new trial. "Accordingly, the trial court did not abuse its discretion by failing to rule on [Local Chapter's] motion before it was overruled by operation of law after the expiration of seventy-five days." *Chambers v. Garay*, 632 S.W.3d 51, 57 (Tex. App.—El Paso 2020, pet. denied); *see also Phan v. Quesada*, No. 04-23-00641-CV, 2024 WL 4969141, at *3 (Tex. App.—San Antonio Dec. 4, 2024, no pet.) (mem. op.) (concluding trial court did not abuse its discretion in permitting appellant's motion for new trial to be overruled by operation of law because nothing in the record showed appellant obtained a hearing on his motion, and he did not file a motion setting a specific date and time for the hearing); *Felt v. Comerica Bank*, 401 S.W.3d 802, 808 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("When a motion for new trial requires the judge to exercise his discretion, the judge must have an opportunity to exercise that discretion before that discretion can be abused."); *see also Schwartz v. Johnson*, No. 05-21-00959-CV, 2023 WL 4944662, at *3 (Tex. App.—Dallas Aug. 3, 2023, no pet.) (mem. op.) (noting trial courts are not required to rule on motions for new trial because the passage of time serves to overrule a new trial motion by operation of law).[12] We have

---

[12] We recognize that 'presentment' of a motion for new trial is no longer required by the rules and that ordinarily a point in a motion for new trial may be considered on appeal when the motion has been overruled by operation of law. Nevertheless, when a motion for new trial requires the exercise of discretion, the judge must have an opportunity to exercise his discretion before that discretion can

already determined the trial court did not err by not granting Local Chapter's motion for continuance, denying Local Chapter's motion for summary judgment, and granting Weinacht's motion for summary judgment. Therefore, Local Chapter has not shown that the trial court acted in an arbitrary or unreasonable manner or acted without reference to any guiding principles of law in not ruling on its motion for new trial.

### E. Motion to modify final summary judgment

Local Chapter also asserts the trial court abused its discretion by failing to rule on or implicitly denying its Motion to Modify Final Summary Judgment.

On December 12, 2024, Local Chapter filed a motion to modify asking that the trial court modify the summary judgment to specifically confirm the court's consideration of Local Chapter's briefing and evidence (Exhibit A and Exhibit B to its motion to supplement) so that the record on appeal was clear that its filings of November 22, 2024, were included in the record. On appeal, Local Chapter asserts the trial court abused its discretion by not granting its motion to modify:

> when the Court and the Court Administrator told Local Chapter it had leave to supplement the summary-judgment record but the Court did not file a signed copy of Local Chapter's proposed order granting it leave to supplement the summary-judgment record or state in the final summary judgment that it considered Local Chapter's supplemental evidence and argument.

Local Chapter contends that by denying the motion to modify, the trial court left ambiguity in the record as to whether the supplemental materials were considered in its Final Summary Judgment.

---

be abused. An abuse of discretion may occur if the defendant, though diligent, is unable to obtain a hearing within the time allowed by the rules or if, after hearing the motion, the judge fails to rule on the motion within that time. However, we hold that where, as here, the record fails to show any attempt to obtain a timely hearing, no abuse of discretion is shown.

*Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank at Dallas*, 703 S.W.2d 356, 358 (Tex. App.—Dallas 1985, no pet.); *Cecil v. Smith*, 804 S.W.2d 509, 512 (Tex. 1991) (recognizing "presentment" requirement was expressly eliminated from Texas Rule of Civil Procedure 329b in 1981).

Local Chapter cites no authority for its argument that a trial court's summary judgment order must specify the pleadings and evidence the court considered, and we conclude Local Chapter's complaint is without merit. The summary judgment order here stated, in relevant part, as follows:

> On November 19, 2024, the Court heard Defendant/Counter-Plaintiff, John William Weinacht's Motion for No-Evidence and Traditional Summary Judgment against Plaintiff. Local Chapter, LLC, and Plaintiff, Local Chapter, LLCs, Motion for Summary Judgment.
>
> After due consideration of the summary judgment evidence and the arguments of counsel, this Court finds that Defendant, John William Weinacht's, Motion should be GRANTED and Plaintiff, Local Chapter. LLCs. Motion should be DENIED.

"A trial court's order granting summary judgment is sufficient if it contains the names of the parties, states that the court has considered the pleadings, arguments of counsel, applicable law, and the facts, and concludes that a party's motion for summary judgment should be granted." *Harris v. Top Brass Janitorial, Carpet & Off. Cleaning Corp.*, No. 05-92-02324-CV, 1993 WL 307405, at *2 n.2 (Tex. App.—Dallas July 30, 1993, no pet.); *see also Singleton v. LaCoure*, 712 S.W.2d 757, 761 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (finding summary judgment order "adequate" because parties' names were included in the heading; court stated it considered the pleadings, the arguments of counsel and the applicable law and facts; and the court concluded appellee's motion for summary judgment should be granted); *C & D Brokerage Co. v. Compass Bank*, No. 14-02-00484-CV, 2003 WL 1748414, at *5 (Tex. App.—Houston [14th Dist.] Apr. 3, 2003, pet. denied) (mem. op.) ("Rule 166a, governing summary judgments, does not require a court to state the factual basis for its order.").

The summary judgment order here was sufficient because it identified the parties, stated the court considered the motions, arguments of counsel, and the summary judgment evidence, and ruled on both motions. We overrule the complaints raised in Local Chapter's third issue.

# VI. Conclusion

For the reasons stated above, we affirm the trial court's summary judgment.

MARIA SALAS MENDOZA, Chief Justice

July 16, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.